## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Maria MARTI,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Civ. No. 2:14-2085 (KM)<br><br>**OPINION** |

### KEVIN MCNULTY, U.S.D.J.:

Maria Marti brings this action pursuant to 42 U.S.C. § 405(g) and 5 U.S.C. § 1383(c)(3) to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI"). Marti alleges that she is unable to engage in substantial gainful activity because she suffers from major depressive disorder, an anxiety disorder, back and neck pain due to spinal disc injuries, and neuropathy. (Pl. Br.[1] 6, ECF No. 9)

For the reasons set forth below, I am unable to say definitively that all relevant evidence was properly considered. Therefore, the decision of the able and conscientious ALJ is REMANDED for clarification and further proceedings consistent with this Opinion.

---

[1]     This brief and the Commissioner's opposition were submitted pursuant to L. Civ. R. 9.1.

## I.   BACKGROUND

Marti seeks DIB and SSI benefits for a period of disability beginning June 11, 2008. (R.[2] 13, ECF No. 6) Her claims were first denied on June 24, 2010, then denied again on reconsideration on December 21, 2010. (*Id.*) On June 17, 2011, Marti filed a request for a hearing. On May 2, 2012, a hearing was held, at which Marti was represented by counsel and testified. Following the hearing, the record was left open for thirty days so that Marti could submit additional evidence, which she did. On October 24, 2012, Administrative Law Judge ("ALJ") Michal L. Lissek denied Marti's application for SSI and DIB benefits. (*Id.* 13–21) On February 10, 2014, the Appeals Council denied Marti's review, making the ALJ's decision the "final decision" of the Commissioner. Marti now appeals that decision.

## II.   DISCUSSION

To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423(c). To be eligible for SSI benefits, a claimant must meet the income and resource limitations of 42 U.S.C. § 1382. To qualify under either statute, a claimant must show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

### a.  Five-Step Process and this Court's Standard of Review

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§

---

[2]   "R." refers to the pages of the administrative record filed by the Commissioner as part of her answer. (ECF No. 7)

404.1520, 416.920. Review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

**Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to step two.

**Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step 3:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step 4:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step 5:** At this point, the burden shifts to the SSA to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

As to all legal issues, this Court conducts a plenary review. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual findings, this Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation and citation omitted). That "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation and citation omitted).

> [I]n evaluating whether substantial evidence supports the ALJ's findings . . . leniency should be shown in establishing the claimant's disability, and . . . the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal citations and quotations omitted). Nevertheless, the ALJ's factual findings will not be disregarded lightly. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610–11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Secretary's decision, with or without a remand to the Secretary for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Commissioner*, 235 F. App'x 853, 865–66 (3d Cir. 2007).

Outright reversal with an award of benefits is appropriate only when a fully developed administrative record contains substantial evidence indicating that the claimant is disabled and entitled to benefits. *Podedworny,* 745 F.2d at 221-222; *Morales v. Apfel,* 225 F.3d 310, 320 (3d Cir. 2000); *see also Bantleon v. Comm'r of Soc. Sec.,* 2010 U.S. Dist. LEXIS 99537, at *38-39 (D.N.J. 2010).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five step inquiry. *See Podedworny,* 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Commissioner of SSA,* 220 F.3d 112, 119–20 (3d Cir. 2000); *Leech v. Barnhart,* 111 F. App'x 652, 658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that Leech was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable."). It is also proper to remand where the ALJ's findings are not the product of a complete review which "'explicitly' weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala,* 40 F.3d 43, 48 (3d Cir. 1994).

### b. The ALJ's decision

The ALJ concluded that Marti was not disabled. ALJ Lissek's determinations are as follows.

At step one, the ALJ determined that Marti had not engaged in substantial gainful activity since June 11, 2008, her alleged disability onset date. (R. 15)

At step two, the ALJ found that Marti had the following severe impairments: "exogenous obesity, low back pain, neck pain, depression, general anxiety disorder, and a history of physical abuse as a child." (*Id.*)

At step three, the ALJ determined that Marti's impairments, alone or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Pt. 404 Subpt. P, App. 1 (the "Listings"). (*Id.* 16)

At step four, the ALJ found Marti's residual functional capacity ("RFC") to be as follows:

> [Marti can,] in an eight hour workday, sit up to six hours, stand/walk up to two hours and lift/carry up to ten pounds occasionally and five pounds frequently. [Marti] is able to perform work involving no climbing ladders/scaffolds or crawling; and no more than occasional bending and crouching.

(*Id.* 17) Based on this RFC and the "side effects of medication and the symptoms of depression, which interfere with [Marti's] ability to concentrate," the ALJ found that Marti "is limited to work which can be learned in one month or less and that involves simple instructions." (*Id.*) The ALJ found that Marti's "anger issues and poor impulse control" limited her "to occasional contact with supervisors and minimal contact with the general public." (*Id.*) The ALJ noted that Marti "can work in proximity of coworkers but not together with them." (*Id.*) The ALJ found that Marti had no past relevant work, so her ability to perform it could not be assessed. (*Id.* 20)

At step five, the ALJ considered Marti's "age, education, work experience, and residual functional capacity," and determined that she could perform jobs that exist in significant numbers in the national economy. (*Id.*) As noted above, such a finding at step five requires that benefits be denied.

### c. Marti's appeal

Marti argues that the Commissioner's decision is not supported by substantial evidence. Specifically, Marti argues that the ALJ (1) failed to address Listing 12.04 (Affective Disorders) in a case involving severe

depression at step three; (2) did not properly evaluate all of Marti's symptoms in assessing her RFC at step four; (3) failed to weigh medical evidence in accordance with 20 C.F.R. §§ 404.1520b, 416.929, 404.1529, and SSR 96-7p, 96-8p; and (4) failed to properly make credibility findings as required by 20 C.F.R. §§ 416.929, 404.1529, and SSR 96-7p.

Because the record does not establish that the ALJ sufficiently analyzed several medical reports, I will remand this matter for further proceedings.

### d. Analysis

#### i. *The ALJ's evaluation of medical evidence (Plaintiff's Points II, III)*

Marti argues that the ALJ failed to weigh all of the available medical evidence in accordance with 20 C.F.R. §§ 404.1520b, 416.929, 404.1529, and SSR 96-7p, 96-8p. (Pl. Br. 30–33) The ALJ's opinion contains no substantial discussion of records from several medical sources.

A district court reviewing an ALJ's decision "need[s] from the ALJ not only an expression of the evidence [he] considered which supports the result, but also some indication of the evidence which was rejected." *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981) (citing *Dobrowolsky v. Califano*, 606 F.2d 403 (3d Cir. 1979)). The Third Circuit has repeatedly explained that, without a clear indication from the ALJ of the evidence that was rejected and the reasons for rejecting it, a district court lacks a sufficient basis to uphold the ALJ's decision:

> [U]nless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Id.* (quoting *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979)) (internal quotations omitted) *see also Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001) (finding "it impossible to determine whether the ALJ's finding . . . is supported by substantial evidence" and noting that the Court was "handicapped by the fact that the ALJ has (1) failed to evaluate adequately all relevant evidence and to explain the basis of his conclusions and (2) failed to explain his assessment of the credibility of, and weight given to, the medical evidence and opinions."

An ALJ may not "reject evidence for no reason or for the wrong reason." *Id.* at 706; *see also Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) ("the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason") (citation and quotation omitted). Therefore, "an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Id.* at 706–07. This need for explanation is "particularly acute" when the ALJ "has rejected relevant evidence or when there is conflicting probative evidence in the record." *Id.* at 706.

Marti names several medical source reports[3] that the ALJ either omitted or did not sufficiently analyze. Several of the reports are lumped

---

[3]      Although some of the medical providers are therapists rather than medical doctors, this does not disqualify their opinions or render them irrelevant. They are clearly acceptable "[m]edical sources" under the "[o]ther sources" category, which states that "[o]ther sources include, but are not limited to . . . medical sources not listed in paragraph (a) of this section (for example, . . . therapists)." 20 CFR §§ 404.913, 404.1513. As the Social Security Administration has instructed:

> Opinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

Titles II & XVI: II & XVI: Considering Opinions & Other Evidence from Sources Who Are Not "Acceptable Med. Sources" in Disability Claims; Considering

together and mentioned only in passing in a single sentence: "[Marti's] mental limitation as described at Exhibits 8F, 22F, 24F and 25F were accommodated in the above residual functional capacity." (R. 20) Some of the evidence contained in these reports appear to contradict the ALJ's findings as to Marti's residual functional capacity as well as the severity of her impairment. Remand is therefore appropriate so that the ALJ can deal with that evidence explicitly.

Evidence to be considered and weighed on remand should include the following:

### 1. Dr. Wei Wang; medical records

The ALJ did not sufficiently consider or discuss the report of Dr. Wei Wang, a clinician at the Hoboken University Medical Center— Community Mental Health Center. The Commissioner concedes that "the ALJ did not specifically discuss Dr. Wang's report in his decision," but argues that "any error was harmless." (Def. Br. 14, ECF No. 10)

Dr. Wang evaluated Marti on June 14, 2010. (R. 373) Dr. Wang found that Marti was "subdued and sad"; was "not very into grooming"; had "psychomotor retardation"; was "depressed and sad and tearful throughout the session"; had occasional "circumstantial" thought processes; was "mildly paranoid"; suffered from "active hallucinations, mostly around her dead son"; had poor impulse control; had "chronic passive suicidal wishes." (R. 374) Dr. Wang diagnosed Marti with major depressive disorder; rule out borderline personality disorder; and a GAF[4]

---

Decisions on Disability by Other Governmental & Nongovernmental Agencies, SSR 06-03P (S.S.A. Aug. 9, 2006).

[4]     A GAF (Global Assessment Functioning) score is a scale used by the American Psychiatric Association to evaluate mental disorders. *See* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 2000) (DSM-IV).

A GAF score in the range of 31–40 indicates "[s]ome impairment in reality testing or communication . . . OR major impairment in several areas, such as work or school, family relations, judgement, thinking, or mood."

score around 40. (*Id.*) Dr. Wang's report, though unanalyzed, would be relevant to at least two portions of the ALJ's analysis: (1) whether Marti's impairments meet or equal the criteria of any impairment found in the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A; and (2) Marti's residual functional capacity.

### 2.   Linda Werbel; medical records

The ALJ also did not analyze Marti's medical records from Dr. Linda Werbel, a Licensed Clinical Social Worker at the Hoboken University Community Mental Health Center. (R. 357–372) Certain aspects of Ms. Werbel's report confirm the ALJ's findings; others, however, cut the other way. Ms. Werbel notes, for example, that Marti has suicidal thoughts monthly and that Marti feels hopeless and anxious. (R. 370) Whether the ALJ chooses to accept or reject such evidence, reasons must be given.

### 3.   Dr. Royston Cruickshank and Elizabeth O'Brien, RN, MA; medical records

The ALJ also omitted analysis of notes and records from the Jersey City Medical Center by Dr. Royston Cruickshank and Elizabeth O'Brien, RN, MA. (R. 513–538) Ms. O'Brien, who saw Marti on many occasions, wrote that Marti had a constricted affect and poor impulse control, and that her GAF score was 41–50.[5] (R. 517, 524) Dr. Cruickshank wrote that Marti suffered from chronic pain that had her taking Vicodin daily, that she was always angry and had poor impulse control, and that her GAF score was in the range of 40–50. (R. 528–29)

---

http://www.omh.ny.gov/omhweb/childservice/mrt/global_assessment_functioning.pdf

[5]      A GAF score of 41–50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."
https://www.omh.ny.gov/omhweb/childservice/mrt/global_assessment_functioning.pdf

Some of these notes are consistent with the ALJ's determinations (*e.g.*, that Marti has poor impulse control), but others seem to contradict it (*e.g.*, Marti's GAF scores). On remand, the ALJ should explain the reasons for accepting or rejecting the contradictory components of this evidence.

### ii.  *The ALJ's step three analysis (Plaintiff's Point I)*

Marti next argues that (1) the ALJ failed to address Listing 12.04 (affective disorders) in the step three analysis, which was mandatory since Marti suffers from severe depression; and (2) the ALJ did not provide adequate explanation for the step three findings. (Pl. Br. 21–23) Because the ALJ's step three analysis may change based on the ALJ's review of the evidence on remand, I do not dwell on this argument.

At Step 3 of the sequential analysis, the ALJ evaluated Marti's impairments to determine if they met or equaled an impairment in the Listing of Impairments in Appendix 1. 20 CFR § 404.1520(a)(4)(iii). Specifically, the ALJ discussed the criteria of Listings 12.06 (anxiety-related disorders) and 12.09 (substance addition disorders). Because Listing 12.09 is clearly inapplicable in this case (Marti does not allege that she suffers from substance addition), I assume that 12.09 was merely a typographical error and that the ALJ intended to cite 12.04 (affective disorders). This error, if that is what it is, does not appear to be substantive; the paragraph B criteria are identical for listings 12.09 and 12.04, and the ALJ found that Marti's impairments do not meet the paragraph B criteria. Nevertheless, as I say, this analysis may change based on the ALJ's review of the evidence on remand. Any step three reanalysis should incorporate the ALJ's consideration of all relevant evidence, and should cite the correct listings.

### iii.  *The ALJ's evaluation of Marti's credibility (Plaintiff's Point IV)*

Finally, Marti argues that the ALJ did not give sufficient consideration to Marti's own testimony or explain why it was not credible. (Pl. Br. 34–36) The ALJ's evaluation of Marti's testimony is limited to the following statement: "After careful consideration of the evidence, the undersigned finds that the claimant's medical determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 17)

The Social Security Regulations are clear as to how credibility determinations must be made:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

*Titles II & Xvi: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7P (S.S.A. July 2, 1996).

At the May 2, 2012 hearing, Marti testified that her concentration is poor, that she sleeps during the day because of the medication she takes, that she relies on an alarm on her phone to remind her to shower, that she does not want to be around family and friends, that she has crying spells, that going out in public makes her feel as though she's "getting shut off oxygen," and that she suffers from anxiety attacks

12

almost every day she goes out. (R. 44–48) On remand, the ALJ should explain the reasons for accepting or rejecting the relevant components of Marti's testimony.

## III.    CONCLUSION

For the foregoing reasons, the ALJ's decision is REMANDED for further proceedings consistent with this Opinion.

Dated: August 6, 2015

**KEVIN MCNULTY**
**United States District Judge**

13